**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DOMINGOS JOHN GONCALVES,   :
     Plaintiff,          :        CIVIL ACTION NO.
                        :        3:17–cv–01830 (JCH)
     v.            :
                        :
NANCY A. BERRYHILL, Acting   :        NOVEMBER 20, 2018
Commissioner, Social Security   :
Administration,             :
     Defendant.       :

**RULING RE: MOTION TO REMAND/REVERSE THE COMMISSIONER'S DECISION (DOC. NO. 18) & MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (DOC. NO. 22)**

## I. INTRODUCTION

Plaintiff Domingos John Goncalves ("Goncalves") brings this appeal under

section 405(g) of title 42 of the United States Code from the final decision of the

Commissioner of the Social Security Administration ("SSA"), which denied his

application for Title II disability insurance benefits and Title XVI supplemental security

income benefits. See Complaint ("Compl.") (Doc. No. 1). On this appeal, Goncalves

challenges only the denial of supplemental security income benefits, not the denial of

disability insurance benefits. See Plaintiff's Memorandum in Support of

Remand/Reversal ("Pl.'s Mem.") (Doc. No. 18-2) at 8–9. Goncalves seeks remand of

the Decision rendered by Administrative Law Judge ("ALJ") Ronald J. Thomas, which

Decision affirmed the Commissioner's denial. See Plaintiff's Motion to Remand/Reverse

the Commissioner's Decision ("Mot. to Remand") (Doc. No. 18). The Commissioner

cross-moves for an order affirming that Decision. See Defendant's Motion for an Order

Affirming the Decision of the Commissioner ("Mot. to Affirm") (Doc. No. 22).

For the reasons set forth below, Goncalves's Motion to Remand/Reverse the Commissioner's Decision is granted. The Commissioner's Motion to Affirm the Decision of the Commissioner is denied.

## II. BACKGROUND

Goncalves applied for disability and supplemental security income benefits on January 29, 2014, alleging a disability onset date of November 15, 2011. See Stipulated Facts (Doc. No. 18-1) at 1. The Commissioner denied Goncalves's application initially, and again upon reconsideration. See id. Goncalves requested a hearing with an ALJ, which was held before ALJ Thomas on August 21, 2015. See id. A supplemental hearing was later held on March 4, 2016. See id.

On May 27, 2016, ALJ Thomas issued an unfavorable decision for Goncalves (the "Decision"), affirming the Commissioner's denial and finding that Goncalves was not disabled. See id. In making this Decision, the ALJ followed the SSA's five-step evaluative process for determining whether an individual is disabled. See Certified Transcript of Record ("R.") (Doc. Nos. 15-1 – 15-10) at 11–12. Specifically, at step two, ALJ Thomas found that Goncalves had severe impairments in the form of degenerative disc disease, mild chronic obstructive pulmonary disease, obesity, learning disability, major depressive disorder, and substance abuse. Id. at 13. At step three, the ALJ determined that Goncalves did not have an impairment, or combination of impairments, that met or medically equaled the severity of any listed impairment. Id. at 14. Next, the ALJ determined that Goncalves had the residual functional capacity ("RFC") to perform light work with the following additional limitations: (1) he could perform occasional bending, twisting, climbing, balancing, crawling, squatting, and kneeling; (2) he required an environment free from concentrated exposure to poor ventilation, temperature

extremes, odors, wetness, humidity, dust, fumes, and gases; (3) he was capable of performing simple, repetitive, routine tasks that do not require teamwork or working closely with the public and that involve only occasional interaction with coworkers, supervisors, and the public. Id. at 18. At step four, the ALJ determined that Goncalves could not perform his past relevant work as a construction laborer. Id. at 25.

At step five, however, the ALJ found that Goncalves was not disabled because he could perform jobs that existed in significant numbers in the national economy. Id. at 26–27. In making this determination, the ALJ first found that, if Goncalves had the RFC to perform the full range of light work, the Medical Vocational Rules, commonly known as "the Grids," would direct a finding of "not disabled" based on Goncalves's age, education, and work experience. Id. at 26. However, because the ALJ had determined that Goncalves's RFC included additional limitations that prevented him from performing the full range of light work, the ALJ proceeded to solicit testimony from a vocational expert on the availability of jobs in the national economy for an individual with Goncalves's vocational work profile. Id. On the basis of the vocational expert's testimony, the ALJ concluded that Goncalves was capable of performing work that was available in significant numbers in the national economy. Id. at 27.

Goncalves requested review by the Appeals Council, which denied the request on September 7, 2017. See Stipulated Facts at 3. Following that denial, ALJ Thomas's Decision became a final decision reviewable by this court. Goncalves then filed this appeal on November 1, 2017. See generally Compl. In his appeal, Goncalves challenges only the Commissioner's denial of supplemental security income benefits, not the denial of disability insurance benefits. See Pl.'s Mem. at 8–9.

### III. STANDARD OF REVIEW

Under section 405(g) of title 42 of the United States Code, it is not a function of the district court to review de novo the ALJ's decision as to whether the claimant was disabled. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Instead, the court may only set aside an ALJ's determination as to social security disability if the decision "is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). While substantial evidence requires "more than a mere scintilla," it is a "very deferential standard of review" that only requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447–48 (2d Cir. 2012) (emphasis in original). If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive, and the court may not substitute its judgment for that of the Commissioner. 42 U.S.C. § 405(g) (2016); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

### IV. DISCUSSION

Goncalves raises a single issue on appeal, namely, whether the ALJ erred by failing to properly consider Goncalves's age when conducting step five of the disability analysis. See Pl.'s Mem. at 5–7. Specifically, Goncalves notes that the ALJ classified him as "a person closely approaching advanced age" (age 50–54), without acknowledging or discussing the fact that, on the date of the ALJ's Decision, Goncalves was less than five months away from becoming "a person of advanced age" (age 55 or older). See id. at 8. In light of this "borderline age situation," Goncalves argues, the ALJ was required by law to consider whether Goncalves's circumstances warranted moving him into the older age category for the purposes of determining whether

Goncalves could perform work available in the national economy. See id. at 10. Accordingly, Goncalves claims that remand is required because the ALJ failed to discuss his borderline age situation. See id. at 12.

The Commissioner acknowledges that the ALJ's Decision does not expressly discuss the issue of borderline age. See Defendant's Memorandum in Support of Affirming the Commissioner's Decision ("Def.'s Mem.") (Doc. No. 22-1) at 7. However, the Commissioner argues that such a discussion was not required because Goncalves was more than "a few months" away from the next oldest age category, and therefore did not qualify as a borderline age situation. See id. at 5. The Commissioner also argues that, even if Goncalves's age was borderline, remand is not warranted because the ALJ's failure to discuss the borderline age situation was harmless error. See id. at 10.

At step five of the disability analysis, the Commissioner bears the burden of showing that the claimant can perform work that exists in significant numbers in the national economy. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). Ordinarily, the Commissioner may satisfy her burden of proof at step five by resorting to the applicable Medical Vocational Guidelines (i.e., "the Grids"), which consist of charts that indicate whether a claimant is disabled based on his or her age, education, RFC, and work experience. See id. at 79; 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the Grids). However, when the Grids fail to describe the full extent of a claimant's limitations, such as when "the claimant's exertional impairments are compounded by significant nonexertional impairments," "the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which [the]

claimant can obtain and perform." Rosa, 168 F.3d at 78 (internal quotation marks omitted).

Relevant to this case, the Grids divide claimants into three age categories: "younger person" (under age 50); "person closely approaching advanced age" (age 50–54); and "person of advanced age" (age 55 or older). 20 C.F.R. § 404.1563(c)-(e). However, the Regulations also provide that these age categories should not be applied "mechanically" in so-called "borderline age situation[s]," which exist when (1) the claimant is "within a few days to a few months of reaching an older age category," and (2) "using the older age category would result in a determination or decision that [the claimant] [is] disabled[.]" 20 C.F.R. § 404.1563(b). In such situations, the ALJ must decide whether it is more appropriate to use the older age category, rather than the claimant's chronological age, to determine the claimant's disability status. 20 C.F.R. § 404.1563(b); HALLEX I-2-2-42(B). When deciding which age category to use, SSA guidance directs ALJs to take a "sliding scale" approach that considers "the overall impact of all the factors on the claimant's ability to adjust to doing other work (e.g., residual functional capacity combined with age, education and work experience . . . .)." HALLEX I-2-2-42(C); see also 20 C.F.R. § 404.1563(b) ("[W]e will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.").

Here, the Commissioner does not dispute that Goncalves's case satisfies the second requirement of a borderline age situation, i.e., using the next oldest age category would result in a determination that Goncalves was disabled. In conducting step five of the disability analysis, ALJ Thomas concluded that Goncalves would be

found "not disabled" under the Grids.  See R. at 26.  In making this determination, the ALJ cited Medical Vocational Rule 202.10, see id., which directs a finding of "not disabled" for persons whose (1) RFC category is "light work"; (2) age category is "closely approaching advanced age"; (3) education category is "limited or less – at least literate and able to communicate in English"; and (4) previous work experience category is "unskilled or none," 20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 202.10.  However, if ALJ Thomas had classified Goncalves as "a person of advanced age," instead of classifying him as "a person closely approaching advanced age," the Grids would have directed a finding of "disabled" for Goncalves.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 202.01 (directing a finding of disability for persons whose (1) RFC category is "light work"; (2) age category is "advanced age"; (3) education category is "limited or less"; and (4) previous work experience category is "unskilled or none.").  In other words, if the ALJ had used the next oldest age category, rather than Goncalves's chronological age, the ALJ would have determined that Goncalves was disabled.

Thus, the question of whether Goncalves's case qualifies as a borderline age situation turns entirely on whether he satisfied the first requirement of being "within a few days to a few months of reaching an older age category."  20 C.F.R. § 404.1563(b).  Goncalves was born on October 13, 1961.  R. at 25.  In claims for supplemental security income benefits, the relevant date for calculating the claimant's age is the date of the ALJ's decision, which, in this case, was May 27, 2016.  See Koszuta v. Colvin, No. 14-CV-694-JTC, 2016 WL 824445, at *2 (W.D.N.Y. Mar. 3, 2016).  On that day, Goncalves was slightly more than 54 years and 7 months old.  Therefore, on the date of the ALJ's Decision, Goncalves was "a person closely approaching advanced age" (age 50–54)

7

who was less than five months away from becoming "a person of advanced age" (age 55 or older).

SSA Regulations do not specify an exact, numerical threshold for when a claimant's age becomes borderline. <u>See</u> HALLEX I-2-2-42(B)(1)("SSA does not have a precise programmatic definition for the phrase 'within a few days to a few months.'"). "This lack of clarity is intentional" because, as the SSA itself has explained, "'fixed guidelines as to when a borderline situation exists . . . would themselves reflect a mechanical approach'" to determining the effect of age on a person's ability to perform work available in the national economy. <u>Hollinsworth v. Colvin</u>, No. 15-CV-543-FPG, 2016 WL 5844298, at *5 (W.D.N.Y. Oct. 6, 2016) (quoting Social Security Ruling 83-10 (Jan. 1, 1983)). That said, the SSA has elaborated on its approach to borderline age cases through guidance published in its Hearings, Appeal and Litigation Law Manual ("HALLEX") and its Program Operations Manual System ("POMS"). In these documents, the SSA notes that "[t]he word 'few' should be defined using its ordinary meaning, <u>e.g.</u>, a small number[,]" and that the Commissioner generally "considers a few days to a few months to mean a period not to exceed six months." HALLEX I-2-2-42(B)(1); POMS DI 25015.006(B). Consistent with this agency guidance, most but not all courts in this Circuit have found that claimants who are within six months of reaching an older age category qualify as a borderline age situation. <u>See</u> <u>Hollinsworth</u>, 2016 WL 5844298, at *5 (collecting cases in which courts have held that a period of up to six months was borderline); <u>Torres v. Comm'r of Soc. Sec.</u>, No. 14-CV-6438P, 2015 WL 5444888, at *10 (W.D.N.Y. Sept. 15, 2015) (same); <u>Metaxotos v. Barnhart</u>, No. 04 CIV. 3006 (RWS), 2005 WL 2899851, at *7–8 (S.D.N.Y. Nov. 3, 2005) (finding that six

months and fourteen days was borderline); but see Waldvogel v. Comm'r of Soc. Sec., 2017 WL 3995590, at *11 (N.D.N.Y. Sept. 11, 2017) (concluding that three months constitutes the outer limits of a borderline age situation); Smolinski v. Astrue, No. 07-CV-386, 2008 WL 4287819, at *4 (W.D.N.Y. Sept.17, 2008) (same).

In light of the SSA's guidance, the weight of the case law in the Second Circuit, and the fact that Goncalves was less than five months from becoming "a person of advanced age," the court concludes that Goncalves fell within the outer limits of a borderline age situation. The ALJ therefore erred by mechanically applying Goncalves's chronological age without discussing whether it would be appropriate to move Goncalves into the older age category. See Waldvogel, 2017 WL 3995590, at *12 ("[T]he ALJ's failure to consider the borderline age situation and determine whether the higher age category should have been applied under the circumstances would therefore be error meriting remand for proper consideration of the borderline age situation."). Indeed, the Record raises serious doubts as to whether ALJ Thomas was even aware of the possibility that Goncalves's age was borderline, even though "[SSA] regulations place the burden on the ALJ to recognize whether a claimant is approaching an age that would qualify him or her for a higher age category[.]" Paskins v. Colvin, No. 14-CV-4098(ADS), 2016 WL 8711441, at *15 (E.D.N.Y. Jan. 15, 2016); see also HALLEX I-2-2-42(B) ("If application of a claimant's chronological age results in a decision that the claimant is not disabled, an ALJ will identify whether the claim may involve a borderline age situation by applying a two-part test[.]"). In particular, while the ALJ's Decision notes that Goncalves was 50 years old on the date of his alleged disability onset, R. at 25, the ALJ never mentions that Goncalves was more than 54 years and 7 months old

on the date of the ALJ's Decision, which, as noted above, is the relevant date for calculating a claimant's age for supplemental security income benefits, <u>see</u>, <u>supra</u>, at 7. This omission raises the distinct possibility that the ALJ relied on the wrong age when evaluating Goncalves's disability status. When combined with the fact that the ALJ never mentioned the issue of borderline age in his Decision or at the hearing, this potential mistake makes it impossible for the court to determine whether ALJ Thomas "mechanically" applied the age categories in violation of SSA Regulations. <u>See</u> <u>Jerome v. Astrue</u>, No. CIV.A. 2:08-CV-98, 2009 WL 3757012, at *12 (D. Vt. Nov. 6, 2009) (finding that the ALJ erred because, while he noted the claimant's age on the alleged disability onset date, he failed to mention or evaluate the fact that the claimant's age was borderline on the date of the ALJ's decision). The Commissioner has therefore failed to meet her burden of establishing that Goncalves's case was not a borderline age situation. <u>See</u> <u>Woods v. Colvin</u>, 218 F. Supp. 3d 204, 209 (W.D.N.Y. 2016) ("[I]t is the Commissioner's burden to establish that a case is not borderline[.]"). Accordingly, the court finds that the ALJ's application of the Grids to Goncalves's case was not supported by substantial evidence, and that remand is therefore appropriate. <u>See</u> <u>Hollinsworth</u>, 2016 WL 5844298, at *5 ("If a claimant's age is 'borderline' and the ALJ fails to consider whether the higher age category should be used, remand is warranted so long as using a higher age category would entitle the claimant to benefits.").

Notwithstanding the ALJ's failure to acknowledge or discuss Goncalves's borderline age, the Commissioner argues that the court should affirm the ALJ's Decision because the ALJ's error was harmless. <u>See</u> Def.'s Mem. at 5–10. In particular, the Commissioner notes that the ALJ's Decision expressly considers "many of the factors"

that are relevant to determining whether Goncalves's borderline age warranted application of an older age category at step five of the disability analysis. <u>See</u> <u>id.</u> at 7. The Commissioner further argues that the evidence in the Record does not support moving Goncalves into the older age category. <u>See</u> <u>id.</u> at 6–8. As additional evidence that the ALJ's omissions were harmless, the Commissioner points to the Appeals Council's denial of review of Goncalves's claim, in which the Appeals Council stated that it had considered Goncalves's borderline age situation and concluded that "the factors in the record do not support application of the higher age category." <u>Id.</u> at 8; R. at 2.

These arguments, however, are unavailing. To begin, the Appeals Council's denial of review cannot cure the ALJ's Decision of its defects because the denial of review is not part of the Commissioner's final decision. Specifically, section 405(g) of title 42 of the United States Code grants courts the power to review the "final decision of the Commissioner." 42 U.S.C. § 405(g). Under SSA Regulations, the Appeals Council decision is the Commissioner's final decision when the Appeals Council <u>grants</u> review of a claim. <u>See</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 106–07 (2000) (citing 20 CFR §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a) (1999)). However, when, as here, the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the Commissioner's final decision,[1] <u>see</u> <u>id.</u> at 107, and the court's review must therefore "focus[ ] on the ALJ's decision," <u>Lesterhuis v. Colvin</u>, 805 F.3d 83, 87 (2d Cir. 2015). Thus, while the Appeals Council's denial of review implicitly acknowledges the ALJ's

---

[1] The Commissioner acknowledges in her brief that the ALJ's Decision, not the Appeals Council notice denying review, stands as the final decision of the Commissioner. Def.'s Mem. at 8.

error in failing to consider the borderline age situation, the Appeals Council's statements do not remedy this error.  See Waldvogel, 2017 WL 3995590, at *13 ("[T]he Appeals Council's statement that it considered the borderline age situation does not remedy the ALJ's error in failing to discuss that matter because the Appeals Council did not grant review and their findings were therefore not the final Agency decision that this Court is tasked with reviewing.").

Nor can the Commissioner avoid remand by presenting post hoc rationalizations of the ALJ's Decision.  It may be that the evidence in the administrative record does not justify moving Goncalves into an older age category, notwithstanding Goncalves's borderline age.  However, such a determination is for the ALJ to make and explain.  As Second Circuit precedent makes clear, courts may not "decide de novo whether a claimant was disabled," or "affirm an administrative action on grounds different from those considered by the agency."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).  Nor may "[a] reviewing court accept appellate counsel's post hoc rationalizations for agency action."  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (internal quotation marks omitted).  "[T]he ALJ (not the Commissioner's lawyers) must build an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review."  Hamedallah ex rel. E.B. v. Astrue, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (internal quotation marks and alterations omitted).  Accordingly, ALJs are required to set forth "the crucial factors in any determination . . . with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

In this case, the ALJ gave no indication that he was even aware of the borderline age issue in Goncalves's case, much less a rationale for why he decided to use Goncalves's chronological age, instead of the older age category, when applying step five of the disability analysis. Thus, because "[i]t is not the province of the court to determine whether or not to consider a borderline age situation[,]" Jerome v. Astrue, 2009 WL 3757012, at *14, the court remands the case to the ALJ for proper consideration of Goncalves's borderline age situation, see Metaxotos v. Barnhart, 2005 WL 2899851, at *8 ("Because the ALJ failed to identify whether this was a borderline situation and failed to address the implications of the timing of her decision, a remand is appropriate.").

## V. CONCLUSION

For the reasons stated above, Goncalves's Motion to Remand/Reverse the Commissioner's Decision (Doc. No. 18) is **GRANTED**, and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 22) is **DENIED**. The case is remanded to the ALJ for proceedings consistent with this Ruling. The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge who issued this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 20th day of November, 2018.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge